UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
CHARLIE JONES,                 :
                               :                PRO SE
                               :
          Petitioner,          :    04 Civ. 0303 (SHS) (THK)
                               :
     -against-                 :
                               :    **REPORT AND RECOMMENDATION**
                               :
THOMAS POOLE,                  :
                               :
          Respondent.          :
------------------------------X

**TO: HON. SIDNEY H. STEIN, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Petitioner Charlie Jones ("Petitioner") was convicted following a jury trial in New York Supreme Court, New York County, of Grand Larceny in the Fourth Degree (N.Y. Penal Law § 155.30(4)) and Criminal Possession of Stolen Property in the Fourth Degree (New York Penal Law § 165.45(2)). Petitioner was sentenced as a persistent felony offender to a prison term of fifteen years to life. He is currently serving his sentence at the Eastern New York Correctional Facility.

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, claiming that (1) he was denied the right to testify before the grand jury that indicted him; (2) he was improperly excluded from the courtroom during his trial; (3) his sentencing as a persistent felony offender was an abuse of discretion and violated the requirements of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000) and Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002); and (4) he was denied effective assistance of appellate

counsel.  Respondent argues that Petitioner's claims are entirely without merit, and that habeas relief should be denied.

This action was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(d) of the Southern District of New York Local Civil Rules.  For the reasons that follow, the Court concludes that Petitioner is not entitled to habeas relief and recommends that this action be dismissed with prejudice.

**BACKGROUND**

I.  Pre-Trial Proceedings

Petitioner was arrested on September 7, 1997 and arraigned the same day.  At the time of the arraignment, Petitioner's counsel served on the assistant district attorney written notice of Petitioner's intention to testify before the grand jury. (See Memorandum of Law in Opposition to Petition ("Resp't Mem.") at 7.) The grand jury heard evidence in the case on September 10, 1999. Apparently unable to contact Petitioner's attorney, the prosecutor presented his case and obtained an indictment without Petitioner's testimony.

On September 29, 1999, Petitioner moved to dismiss the indictment on the ground that he had been denied the opportunity to testify before the grand jury.  That motion was denied by the court (Wittner, J.) after a hearing on January 25, 2000. (See Transcript of § 190.50 Hearing, dated Jan. 25, 2000, at 7.)  On June 19, 2000,

the court (Fried, J.) conducted a _Mapp_ hearing and denied Petitioner's application to suppress evidence that was seized from him at the time of his arrest. (_See_ Transcript of _Mapp_ Hearing, dated June 19, 2000, at 41.)

Prior to his trial, Petitioner applied to the New York Supreme Court, Appellate Division, _pro se_, for a writ of mandamus. Petitioner sought to compel the New York Supreme Court to dismiss the indictment and to issue written decisions on all defense motions. He also sought an investigation into all cases over which Justices Wittner and Torres had presided during the previous five years, and all cases that had been prosecuted during that period by the assistant district attorney handling his case. (_See_ Resp't Mem. at 2.) The court denied the application on November 14, 2000, after Petitioner's trial and sentencing were already completed. _See Jones v. Wittner,_ 277 A.D.2d 1062, 715 N.Y.S.2d 844 (1st Dep't 2000.)

II. _Trial and Sentencing_

Petitioner proceeded to trial in New York Supreme Court on August 23, 2000. At the outset, Petitioner acted as his own counsel, but he was subsequently denied the right to proceed _pro se_ because he became disruptive and would not follow the court's instructions. Petitioner persisted in arguing with the court about its rulings, and complained to both the jury and the judge about his dissatisfaction with his attorney. After several warnings that

his inappropriate conduct would result in his being removed from the courtroom, Petitioner attempted to spit on his attorney and was removed from the courtroom for the duration of the trial.

The prosecution called two witnesses, Police Officer David Belcher and Sergeant John Teehan. The officers testified that the day they arrested Petitioner, September 7, 1997, they were conducting an operation to apprehend luggage thieves in the lobby of the Loews Hotel in Manhattan. (See Trial Transcript, dated Aug. 23, 2000 ("Tr."), at 174-76, 201-03, 220-21.) Shortly after 11:00 a.m., Officer Belcher saw Petitioner approach the Longwood Gourmet Deli, located near the hotel at Lexington Avenue and East 48th Street. Officer Belcher saw Petitioner look inside the deli through a window. Petitioner then went into the deli. Although there were many empty tables, Petitioner sat directly next to a table occupied by Adva Prager ("Prager"), a tourist from Israel. (See id. at 181-82, 209, 226.) A black knapsack rested on the chair opposite the one in which Prager was sitting. A short time after Petitioner sat down, Prager got up and walked to the back of the deli to retrieve sugar for her coffee. (See id. at 184, 212, 223.) Petitioner then rose, placed a blazer he had been carrying over the black knapsack, picked up the knapsack, and carried it out of the deli. (See id. at 176, 186-87, 215.) Petitioner crossed the street and entered another restaurant, the Bonnie Delicatessen. Sergeant Teehan went into the Longwood Deli and spoke with Prager.

(See id. at 226-227.)   Officer Belcher crossed the street to apprehend Petitioner.  As he did so, Petitioner emerged from the Bonnie Delicatessen and entered a taxi. (See id. at 186, 214-15.) Officer Belcher removed Petitioner from the taxi and arrested him. (See id. at 176, 186-87, 215.)   Petitioner dropped the knapsack under the taxi, and Office Belcher retrieved it. (See id. at 187, 216.)  At the 17th Precinct, Officer Belcher examined the contents of the knapsack. (See id. at 187-88.)   Inside he found a "fanny pack" that contained a VISA credit card with an expiration date of July 2000, passports in the name of Prager and her husband, and $130 in cash. (See id. at 188, 195-200, 214, 216.)  Officer Belcher photographed the knapsack and photocopied the credit card, passports and cash, before returning them to Prager. (See id. at 188, 189.)   Officer Belcher then "vouchered" the fanny pack by itemizing its contents on a standardized form. (See id. at 189-90.)

The defense presented no witnesses.  The next day, August 24, the jury returned a verdict convicting Petitioner as charged. Petitioner was sentenced on October 2, 2000.  The prosecutor submitted evidence of Petitioner's past felony and misdemeanor convictions in order to have him adjudicated a persistent felony offender. (See Sentencing Transcript, dated Oct. 2, 2000 ("Sent. Tr."), at 2.)  The court adjudicated him as such, and sentenced Petitioner to a prison term of fifteen years to life. (See id. at 15.)

III.  Post-Conviction Proceedings

On direct appeal to the Appellate Division, First Department, Petitioner argued that he was deprived of the right to testify before the grand jury, that the trial court improperly excluded him from the courtroom without considering alternatives or providing him with monitoring and communication facilities, and that the sentencing court abused its discretion in adjudicating him a persistent felony offender.  The Appellate Division affirmed Petitioner's conviction on November 20, 2001. See People v. Jones, 288 A.D.2d 107, 733 N.Y.S.2d 44 (1st Dep't 2001).  The New York Court of Appeals (Smith, J.) denied Petitioner leave to appeal on January 11, 2002. See People v. Jones, 97 N.Y.2d 706, 739 N.Y.S.2d 106 (2002).

On July 25, 2002, Petitioner filed a petition for a writ of error coram nobis in the Appellate Division.  Petitioner claimed that his appellate counsel was constitutionally ineffective because she failed to raise an appellate claim of ineffective assistance of trial counsel.  The Appellate Division denied the petition on February 27, 2003. See People v. Jones, 302 A.D.2d 1020, 757 N.Y.S.2d 505 (1st Dep't 2003).

On March 27, 2003, Petitioner filed a motion pursuant to New York Criminal Procedure Law § 440.20, seeking to vacate his sentence on the ground that it violated the requirements of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000) and

Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002). The New York Supreme Court denied that motion on July 24, 2003. (See Decision and Order, dated July 24, 2003, at 5.) On October 9, 2003, the Appellate Division denied Petitioner's application to appeal from the denial of that motion. See People v. Jones, 2003 N.Y. App. LEXIS 10615 (1st Dep't 2003). The instant habeas proceeding followed.

**DISCUSSION**

I.  The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it was "based on an unreasonable determination of the facts in light of the evidence presented in state court." Id. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or if "the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000); accord Leslie v. Artuz, 230 F.3d 25, 32 (2d Cir. 2000);

7

<u>Clark v. Stinson</u>, 214 F.3d 315, 320 (2d Cir. 2000).

The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (and not dicta) of the Supreme Court. <u>Williams</u>, 529 U.S. at 413, 120 S. Ct. at 1523; <u>accord</u> <u>Leslie</u>, 230 F.3d at 32. A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413, 120 S. Ct. at 1523. The inquiry for a federal court is not whether the state court's application of the governing law was merely erroneous or incorrect, but whether it was "objectively unreasonable." <u>See</u> <u>id.</u> at 408-10, 120 S. Ct. at 1521-22; <u>accord</u> <u>Lurie v. Wittner</u>, 228 F.3d 113, 128-29 (2d Cir. 2000). Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct [and the petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings of fact "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell,</u> 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

II. <u>Petitioner's Right to Testify Before The Grand Jury</u>

Petitioner contends that he was improperly denied the right to

testify before the grand jury that indicted him. Petitioner does have such a right under New York law. See N.Y. Crim. Proc. Law § 190.50. However, a claim based on the purported denial of a right provided for under state law cannot be entertained in this proceeding, for "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (quoting Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991)).

There is no clearly established federal right to testify before a grand jury. The Constitution does not require a state "to observe the Fifth Amendment's provision for presentment or indictment by a grand jury." Alexander v. Louisiana, 405 U.S. 625, 633, 92 S. Ct. 1221, 1226-27 (1972). Therefore, the failure to appear before a state grand jury implicates no federal rights. See Hurtado v. California, 110 U.S. 516, 538, 4 S. Ct. 111, 122 (1884); Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990). In fact, in federal prosecutions, where the right to a grand jury indictment does exist, defendants are not entitled to testify before the grand jury. See United States v. Williams, 504 U.S. 36, 51-52, 112 S. Ct. 1735, 1744 (1992); United States v. Ruiz 894 F.2d 501, 504-05 (2d Cir. 1999). Moreover, once convicted by a petit jury, claims of deficiencies in state grand jury proceedings are not cognizable on federal habeas review. See Lopez v. Riley, 865 F.2d 30, 32-33 (2d

9

Cir. 1989).

Because Petitioner's claim that he was denied the right to testify before the grand jury does not implicate federal law or any provision of the Constitution, the claim should be dismissed.[1]

III. Petitioner's Exclusion from the Courtroom

Petitioner claims that his rights to confrontation and due process were violated when the trial court excluded him from the courtroom without "considering any alternatives." Prior to jury selection, Petitioner informed the court that he wished to represent himself at trial and that he wanted an adjournment. (See Tr. at 4, 13.) The court granted Petitioner's request to proceed pro se, and directed assigned counsel, Hershel Katz ("Katz"), to serve as legal adviser, but denied the request for an adjournment. After the ruling, Petitioner continued to argue for an adjournment. (See id. at 19-20.) The court admonished Petitioner:

> THE COURT: [O]nce I rule, you're bound by that rule. You have the right to appeal, but you can't argue with me about my rules.
>
> PETITIONER: Just once—

---

[1] Petitioner also contends that the denial of his right to testify before the grand jury violated the Establishment Clause, U.S. Const. amend. I, because the prosecutor took the Jewish holiday of Rosh Hashanah into consideration in his decision to move forward with the grand jury proceedings without Petitioner's testimony. Given that Petitioner had no constitutional right to a grand jury indictment, and no constitutional right to testify before the grand jury, the motivation of the prosecutor in deciding to go forward without Petitioner's testimony presents no issue for habeas relief.

>
> THE COURT: If you persist in arguing with me about my
> rulings, first I am going to have to question whether you
> can represent yourself. Second of all, you're not going
> to be able to remain in the room....

(Id. at 20.)   Petitioner nevertheless continued to argue for an

adjournment.  The court again warned Petitioner about his conduct:

>
> THE COURT: Now don't go arguing these rulings, because
> they're done.
>
> PETITIONER: Excuse me, but you—
>
> THE COURT: No. There's no excuse me. Excuse me will be
> your excuse me, meaning, you leave the room.

(Id. at 21-22.)

Shortly thereafter, Petitioner withdrew his application to

represent himself, but demanded a lawyer other than Katz, who was

his fourth attorney. (See id. at 25-27.)   The court denied that

application, but Petitioner persisted in arguing with the court.

The court again admonished Petitioner:

>
> THE COURT: If you persist in arguing with me, and talking
> about Katz, you will be taken from the room. The trial
> will proceed....

(Id. at 29.) Petitioner later elected to continue to represent

himself, and proceeded to select a jury.

The next morning, rather than deliver an opening statement,

Petitioner began to complain to the jury about his dissatisfaction

with his attorney, ignoring numerous directives from the court to

limit his remarks to what he believed the evidence would show. (See

id. at 158-160.)   The court excused the jury from the courtroom,

and again warned Petitioner:

> THE COURT: Now, I am telling you. You are dangerously close to not only being not permitted to represent yourself, but being excluded from this courtroom. Now, I am going to give you one more opportunity, but if you are not going to comply with the rules of trial procedure, and if you think this is a soap box where you can get up and talk about anything you want, you're going to be no longer able to represent yourself. That will be step one. You will be sitting back in that seat. I will then appoint Mr. Katz to represent you. Now, if you do act out after that, you will be excluded from the courtroom, do you understand?
>
> PETITIONER: Yeah.

(Id. at 161-62.)

The jurors were brought back into the courtroom and Petitioner again began to complain to them about Katz. (See id. at 162-64.) As the court directed the prosecutor to call his first witness, Petitioner stated that he wanted to "ask one more question" and the court permitted him to speak. (Id. at 164.) Petitioner stated that Katz was "sitting here for nothin'," that the court was attempting to "railroad" him, and that the prosecutor was "a liar." (Id. at 164-65.) After the court asked the jury to leave the room, Petitioner again accused the judge of "trying to railroad" him. (Id. at 166.) The court then ruled that Petitioner would no longer be able to proceed pro se and that Katz would represent him. (Id. at 167.) The court continued:

> THE COURT: [I] say this and I can't make myself any clearer: if you interfere with this trial by shouting out after I have asked you to be quiet or refusing to go back to your seat one time, you will forfeit your right to be present for the remainder of this trial. I will ask the

jury to leave. You will be cuffed, taken back to the
pens, and we will keep you informed as to the status of
this matter. You are not going to control this room, Mr.
Jones. Now, do you want to leave now, or do you want to
stay?

PETITIONER: Yeah, I am going to stay.

(Id. at 167.)

After the jury was brought back into the courtroom, the
following transpired:

THE COURT: Jurors, thank you for your patience. As I said
yesterday, this is a very unusual, somewhat special
situation. At this point, I made a determination that Mr.
Jones would not represent himself; that it would be the
appropriate ruling of this court that Mr. Jones be
represented by counsel. Therefore, I asked Mr. Katz to
function as his counsel, as his lawyer.

PETITIONER: I spit on that. I spit on that. I spit on
him. I spit on him.

(Whereupon [Petitioner] spits on Mr. Katz.)

THE COURT: All right.

PETITIONER: You would, you would, you would not—

THE COURT: Jurors, step out.

PETITIONER: I spit on him. I spit on you. You will not
represent me. You will not represent me. You will not
give me a fair trial. I will not let you represent me.

(Whereupon, the jury steps out of the courtroom).

(Id. at 168-69.)

After the jury departed, the court ordered Petitioner removed

from the courtroom, and ordered the record to reflect that

Petitioner attempted to spit on Katz.  Neither Petitioner nor Katz

suggested any alternative to exclusion.  Katz did move for a

mistrial on the ground that Petitioner's outburst may have prejudiced the jury, but the court denied the motion. (See id. at 169-70.) After the jurors were brought back into the courtroom, the court directed them to draw no inference from Petitioner's absence, to disregard the statements Petitioner had made, and to decide the factual issues in the case objectively. (See id. at 171.) At Katz's urging, the court asked the jurors whether any of them felt unable to remain fair and impartial given Petitioner's conduct. No juror responded affirmatively. (See id. at 173.)

With Petitioner removed from the courtroom, the state presented its case, which consisted of two witnesses. After the state rested, the court directed that Petitioner be brought into the courtroom to discuss whether he wished to testify and to confer with his attorney about any additional questions he wished to have directed to the state's two witnesses. (See id. at 172-73.) Upon his return to the courtroom, the court asked Petitioner whether he wished to testify. Petitioner replied that it made "no sense" for him to do so because the case had proceeded without him. (See id.) Petitioner then began to complain again about Katz and his dissatisfaction with the court's rulings, and the court again ordered that he be excluded from the courtroom. (See id. at 231-32.) The defense rested, and the proceedings continued through the summations and the jury charge. (See id. at 233-78.) After the jury retired to begin deliberations, the court once again had

14

Petitioner brought back into the courtroom. (See id. at 280.) The court asked Petitioner whether he wished to conduct himself properly in order to be present for consideration of any notes from the jury and delivery of the verdict. (See id. at 280-81.) Petitioner responded, "You went through the whole trial without me, so do your thing." (Id. at 281.) He was then again removed from the courtroom. (See id.)

Petitioner now contends that the trial court deprived him of due process and the right to confront the evidence against him when it ordered him removed from the courtroom without "considering any alternatives to exclusion" or "giving [him] the opportunity to communicate with his counsel or to hear the relevant proceedings." Petitioner's claim is meritless.

A. Removal from the Courtroom

Every criminal defendant has the right to be "present at all stages of trial." Faretta v. California, 422 U.S. 806, 820, n.15, 95 S. Ct. 2525, 2533 (1975). Indeed, this right is "scarcely less important to the accused than the right of trial itself." Diaz v. United States, 223 U.S. 442, 455, 32 S. Ct. 250, 254 (1912). However, the right to be present at trial is not absolute, and can be forfeited by a defendant's own misconduct. See Illinois v. Allen, 397 U.S. 337, 343, 90 S. Ct. 1057, 1060-61 (1970); Norde v. Keane, 294 F.3d 401, 411 (2d Cir. 2002). Thus, the Supreme Court has held that "a defendant can lose his right to be present at

trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Allen, 397 U.S. at 343, 90 S. Ct. at 1060.

In the instant case, the trial court went to great lengths to warn Petitioner that his conduct could result in his removal from the courtroom. No fewer than fives times did the court admonish Petitioner that his conduct was unacceptable and that if he persisted, he would be removed. The Appellate Division concluded "[Petitioner's] continued disruptive behavior in the courtroom, despite repeated warnings from the court, justified his exclusion from the trial and the consequential loss of his right to be present." Jones, 288 A.D.2d 107 at 107, 733 N.Y.S.2d at 44. Its conclusion was not an unreasonable application of Illinois v. Allen. Accordingly, Petitioner's claim does not merit habeas relief.

B. Alternatives to Exclusion and Communication with Counsel

Petitioner also faults the trial court for not "considering any alternatives to exclusion" nor "giving [him] the opportunity to communicate with his counsel or to hear the relevant proceedings." (See Petition For Writ of Habeas Corpus, dated Sept. 17, 2003 ("Pet."), at 4.) The Appellate Division found that because neither

Petitioner nor his attorney requested alternatives to exclusion or that measures be taken so that defendant could monitor the proceedings and consult with his attorney, those issues were not preserved for appellate review; it nevertheless went onto reject the claim on its merits in an alternate holding. See People v. Jones, 288 A.D.2d 107 at 108, 733 N.Y.S.2d at 44.

A federal habeas court cannot address a claim when there was an independent and adequate state law basis for denying the claim. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002); Cox v. Miller, 296 F.3d 89, 100 (2d Cir. 2002). Under New York law, an alleged error at trial is preserved for appellate review where "a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). This rule "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 737-38 (1995).

New York's codified contemporaneous objection rule is a procedural bar which qualifies as an independent and adequate state basis for denying a claim in a federal habeas corpus proceeding.

See Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999) (reaffirming propriety of New York's contemporaneous objection rule, and recognizing that it may constitute an adequate and independent state procedural ground); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (supporting conclusion that where Petitioner failed to object to jury charge, his claim was procedurally barred) (citing N.Y. Crim. Proc. Law § 470.05(2)); Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir. 1991) ("It is undisputed that [petitioner's] failure to note [a contemporaneous] objection constituted procedural default under New York law.").

Petitioner may overcome his procedural default by demonstrating cause for the default and prejudice, or that a fundamental miscarriage of justice would result if the Court does not consider his claim. See Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989); Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003). "[T]he cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991) (quoting Murray v. Carrier, 477 U.S. 467, 488, 106 S. Ct. 2639, 2645 (1986)); accord Bloomer v. United States, 162 F.3d 187, 191 (2d Cir. 1998). Where a "petitioner has failed to establish 'cause,' in other words why he did not raise these claims at the appropriate time and in the appropriate forum, it is unnecessary to make an

inquiry into the question of "'prejudice.'" <u>Bentley v. Scully</u>, 851

F. Supp. 586, 604 (S.D.N.Y.), <u>vacated on other grounds</u>, 41 F.3d 818

(2d Cir. 1994); <u>accord</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 134 n.43, 102

S. Ct. 1558, 1575 (1982); <u>Tor v. Duncan</u>, No. 01 Civ. 3984 (DLC),

2003 WL 22479250, at *4 (S.D.N.Y. Nov. 4, 2003); <u>Richter v. Artuz</u>,

77 F. Supp. 2d 385, 395 (S.D.N.Y. 1998) (Report and Recommendation,

adopted on Nov. 18, 1999). In the instant case, Petitioner provides

no explanation for his procedural default, nor is any cause

apparent from the record. In the absence of cause, the Court need

not address the issue of prejudice.

Although an exception to the cause and prejudice requirement

may be made if necessary to avoid a fundamental miscarriage of

justice, <u>see</u> <u>Murray</u>, 477 U.S. at 495-96, 106 S. Ct. at 2649, there

is nothing in the record to suggest that such exceptional

circumstances can be demonstrated here. A fundamental miscarriage

of justice occurs only in the extraordinary case "where a

constitutional violation has probably resulted in the conviction of

one who is actually innocent." <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d

Cir. 2002) (quoting <u>Murray</u>, 477 U.S. at 496, 106 S. Ct. at 2649).

"To establish actual innocence, [a] petitioner must demonstrate

that in light of all the evidence, it is more likely than not that

no reasonable juror would have convicted him." <u>Id.</u> (quoting <u>Bousley</u>

<u>v. United States</u>, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998))

(internal quotation marks omitted).

Petitioner offers no new evidence of innocence. Without offering new evidence, this Court cannot find that a miscarriage of justice occurred without "asserting that none of the jurors acted reasonably." <u>Lucidore v. N.Y. State Div. of Parole</u>, No. 99 Civ. 2936 (AJP), 1999 WL 566362, at *8 (S.D.N.Y. Aug. 3, 1999), <u>aff'd</u>, 209 F.3d 107 (2d Cir. 2000); <u>see also</u> <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002) ("[Petitioner] presented no new evidence of his innocence and did not make the necessary showing required ... to bypass the procedural bars."). Because Petitioner cannot demonstrate that a miscarriage of justice will result if his claim is not heard, his claim is barred from further review. In any event, the claim is meritless.

Petitioner's claim that the trial court was required, <u>sua sponte</u>, to consider alternatives to exclusion is without support. In <u>Allen</u>, the Supreme Court held that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." 397 U.S. at 343, 90 S. Ct. at 1061. The Court recognized that "no one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." <u>Id.</u> Thus, the Court identified "at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself

properly." Id.  By choosing one of these permissible options, the trial court properly exercised its discretion in accord with the requirements of Allen.

        There is also no support for Petitioner's contention that he had a right to monitor the proceedings or that his right to confer with his counsel was violated.   In Allen, the Supreme Court attached no condition that an excluded defendant be given the opportunity to monitor the proceedings.  Rather, the Court held that a trial court  may "take [the defendant] out of the courtroom until he promises to conduct himself properly." 397 U.S. at 344, 90 S. Ct. at 1061.  Nor does Petitioner cite any Supreme Court case in which a majority of the Court held that a defendant removed from the courtroom had a right to special arrangements through which he could communicate with counsel or monitor the proceedings. Cf. Allen, 397 U.S. at 351, 90 S. Ct. at 1064 (Brennan, J., concurring) ("I would add only that when a defendant is excluded from his trial, the court should make reasonable efforts to enable him to communicate with his attorney and, if possible, to keep apprised of the progress of his trial. Once the court has removed the contumacious defendant, it is not weakness to mitigate the disadvantages of his expulsion as far as technologically possible in the circumstances."); see also Bell v. Evatt, 72 F.3d 421, 432 (4th Cir. 1995) ("We have never held, nor does Allen require that a defendant who has been removed from the courtroom because of

his disruptive behavior has a right to an audio hook-up. We see no reason to create such a right."); United States v. Solomon, No. 95 Cr. 154 (LAP), 1997 WL 232523, at *7, (S.D.N.Y. May 8, 1997) (once defendant forfeited his right to be present, he retained no independent right to watch the proceedings on closed-circuit television).

Moreover, the trial court did, in fact, take steps to allow Petitioner to confer with counsel. It brought Petitioner back into the courtroom after the state rested, and allowed Petitioner to decide whether he wanted to testify or if he had questions to suggest to his counsel. The record does not reflect any requests by counsel to confer with his client or any prohibition on such communication from the court.

Thus, "[deplorable as it is to remove a man from his own trial," Allen, 397 U.S. at 347, 90 S. Ct. at 1063, the Court concludes that the New York courts committed no legal error, and certainly did not unreasonably apply any clear federal law, in removing Petitioner from the courtroom. Accordingly, Petitioner's removal from the courtroom does not entitle him to habeas relief.

IV.  Petitioner's Sentence

_____Petitioner attacks his sentence on two grounds. He contends the trial court abused its discretion when it sentenced him as a persistent felony offender, and he contends that his sentencing violated the requirements of Apprendi v. New Jersey, 530 U.S. 466,

120 S. Ct. 2348 (2000) and <u>Ring v. Arizona</u>, 536 U.S. 584, 122 S. Ct. 2428 (2002). Neither contention entitles Petitioner to the habeas relief he seeks.

Petitioner argues that the trial court abused its discretion when it sentenced him as a persistent felony offender, given the nature of his crime and his criminal history. As a general matter, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992); <u>see also</u> <u>Dorsey v. Irvin</u>, 56 F.3d 425, 427 (2d Cir. 1995); <u>Underwood v. Kelly</u>, 692 F. Supp. 146, 162 (E.D.N.Y.), <u>aff'd</u> 875 F.2d 857 (2d Cir. 1988). Petitioner's sentence was authorized by New York Penal Law § 70.10, which allows the court to sentence a defendant "who stands convicted of a felony after having previously been convicted of two or more felonies" as if he committed a Class A-I felony, so long as the sentencing judge "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest."[2] Petitioner had

_____

[2] New York Penal Law § 70.10 (2) states:
    Authorized sentence. When the court has found, pursuant to
    the provisions of the criminal procedure law, that a person
    is a persistent felony offender, and when it is of the
    opinion that the history and character of the defendant and
    the nature and circumstances of his criminal conduct
    indicate that extended incarceration and life-time
    supervision will best serve the public interest, the court,
    in lieu of imposing the sentence of imprisonment authorized
    by section 70.00, 70.02, 70.04 or 70.06 for the crime of

five prior felony convictions at the time of sentencing in the instant case. (See Sent. Tr. at 5.) New York Penal Law § 70.00 requires the judge to sentence an A-I felony offender to an indeterminate sentence, with a minimum of not less than fifteen years but not more than twenty-five years' imprisonment, and a maximum of life imprisonment. N.Y. Penal Law § 70.00. Petitioner's sentence fell within that range.

Because the sentence imposed by the court of fifteen years to life imprisonment was within the range authorized by New York law, Petitioner's sentence implicates no federal constitutional principle that merits habeas relief.

_____ Petitioner further argues that his sentence should be set aside because it violated the rule of Apprendi v. New Jersey. In Apprendi, the Supreme Court held that in order for a sentence to be constitutional under the Sixth Amendment, a factual finding that drives the sentence above the otherwise applicable statutory maximum penalty (other than the fact of a prior conviction) must be found by the jury beyond a reasonable doubt, just as any other element of the crime must be. See id. at 490, 120 S. Ct. at 2362-63. Petitioner's prior felonies, which triggered the court's conclusion that he be sentenced as a persistent felony offender, are not facts which Apprendi requires a jury to find. Petitioner

which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record.

contends, however, that the discretionary element of the persistent offender statute, which requires the judge to find "the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest," is a factual finding not exempted under the prior-conviction exception to the Apprendi rule. Accordingly, he argues that because the trial judge, and not the jury, determined his status as a discretionary persistent felony offender, the sentence violated his Sixth Amendment right to a jury trial as enunciated in Apprendi and its progeny, particularly Ring v. Arizona.

Petitioner's argument that his sentence violated the Apprendi rule is foreclosed by the Second Circuit's decision in Brown v. Greiner, 409 F.3d 523 (2d Cir. 2005). There, the Second Circuit, overturning two orders by district judges granting writs of habeas corpus on the very ground upon which Petitioner seeks relief, held that New York's sentencing scheme was consistent with Apprendi. The Court found that it was not unreasonable, in light of then-existing Supreme Court precedent, for state courts to conclude that a sentencing judge's "opinion" as to what type of sentence would "best serve the public interest" is not a factual finding within the meaning of Apprendi. Brown, 409 F.3d at 526.

Petitioner's claim, however, is not limited to Apprendi. He also argues that his sentence violated the rule of Ring v. Arizona,

536 U.S. 584, 122 S. Ct. 2428 (2002). There, the Court found Arizona's death penalty sentencing scheme to violate the Apprendi rule, because it required the sentencing judge to hold a hearing outside the presence of the jury after a finding of guilt, in which the government and defense could offer additional evidence related to the defendant's criminal history and conduct, and the defense could offer mitigating evidence. Id., 536 U.S. at 592, 122 S. Ct. at 2434-35. At the conclusion of the hearing, the judge was required to make factual determinations regarding whether certain enumerated aggravating factors and any mitigating factors were present, such as whether the defendant had been convicted of other serious offenses, whether the defendant had been convicted while on parole, and whether the offense of conviction was particularly heinous. Id., 536 U.S. at 593, 122 S. Ct. at 2435 n.1. Only if the judge found that at least one of the aggravating factors, and no mitigating factors, were present could the defendant receive a death sentence. Id., 536 U.S. at 592, 122 S. Ct. at 2434-35. Applying the reasoning of Apprendi, the Court found the sentencing scheme unconstitutional because it allowed a defendant's sentence to be increased from life imprisonment to death only if a "sentencing judge, sitting without a jury" made the factual findings related to the presence of aggravating factors. Id., 536 U.S. at 609, 122 S. Ct. at 2443. The Court emphasized Apprendi's requirement that "[i]f a State makes an increase in a defendant's

26

authorized punishment contingent on the finding of a fact, that fact--no matter how the State labels it--must be found by a jury beyond a reasonable doubt." Id., 536 U.S. at 602, 122 S. Ct. at 2439 (citing Apprendi, 530 U.S. at 482-83, 120 S. Ct. at 2348). Petitioner contends that the Arizona sentencing regime is analogous to New York's persistent felony offender statute, in that both require a judge to make certain factual findings in order to impose a sentence above the sentencing range otherwise authorized by law, although the specific factors a New York judge must rely on to adjudicate the defendant a persistent felony offender are unenumerated.

Because Ring was not decided at the time of the sentencings at issue in Brown, the Second Circuit's opinion was limited, in that it relied solely on the line of cases culminating in Apprendi, but not the cases that have followed Apprendi, including Ring. See Brown, 409 F.3d at 534 ("The universe of 'clearly established Federal law, as determined by the Supreme Court of the United States' for the purpose of this appeal is therefore limited to Apprendi and the cases that preceded it."). Thus, the question of whether New York's discretionary persistent felony offender sentencing scheme, Penal Law § 70.10, is consistent with post-Apprendi cases, especially Ring, has not been addressed by the Second Circuit or the Supreme Court. Accordingly, this Court must decide whether it may apply Ring to Petitioner's case. The Court

concludes it may not.

The Supreme Court has explicitly held that <u>Ring</u> "announced a new procedural rule that does not apply retroactively to cases <u>already final on direct review</u>." <u>Schriro v. Summerlin</u>, 542 U.S. 348, --, 124 S. Ct. 2519, 2526 (2004)(emphasis added.)  A case becomes final after direct review when the time to seek review in the United States Supreme Court by writ of certiorari expires, which, in New York, is ninety days after the Court of Appeals denies leave to appeal. <u>See</u> <u>Williams v. Artuz</u>, 237 F.3d 147, 151 (2d Cir. 2001); <u>see also</u> <u>Diaz v. Scully</u>, 821 F.2d 153, 156 (2d Cir. 1987) (stating that "final," in the context of retroactivity analysis, "means that a judgment of conviction has been entered, the time for direct appeals from that judgment has expired, and the time to petition the United States Supreme Court for certiorari has expired").

Petitioner was denied leave to appeal to the York Court of Appeals on January 11, 2002. <u>See</u> <u>People v. Jones</u>, 97 N.Y.2d 706, 739 N.Y.S.2d 106 (2002).  Direct review of his conviction therefore became final ninety days later, on April 11, 2002.  <u>Ring</u> was decided several months later, on June 24, 2002.  Thus, as decided in <u>Schriro</u>, the Court cannot apply <u>Ring</u> to Petitioner's case.

It follows that the question presented here is no different from the one presented in <u>Brown</u>.  There, the Second Circuit held that "it was not unreasonable for the New York Court of Appeals to

28

conclude that determinations regarding the defendant's history, character, and offense fall into a different category from the essential statutory elements of heightened sentencing, or functional equivalents thereof, that were addressed by the Supreme Court's Apprendi ruling." Brown, 409 F.3d at 534.

Because Petitioner's sentence did not violate the principles of Apprendi, he is not entitled to habeas relief on this basis.

V.   Claim of Ineffective Assistance of Appellate Counsel

Finally, Petitioner seeks habeas relief on the ground that his appellate counsel was ineffective for failing to raise on appeal a claim of ineffective assistance by trial counsel.[3]

Petitioner faults his appellate counsel for failing to argue ineffective assistance of trial counsel based on four purported deficiencies by his attorney at trial: (1) trial counsel's failure to move for a dismissal of the case based on insufficiency of the evidence; (2) trial counsel's failure to protect Petitioner's right to confront and cross-examine the complaining witness in the case; (3) trial counsel's failure to request a missing witness charge; and (4) trial counsel's failure to take exception to the prosecution's "mischaracterization and use of knowingly false

---

[3] At times, Petitioner's brief raises the issue of ineffective assistance of trial counsel as a separate ground for habeas relief. This Court will consider the merits of that claim as part of its analysis of Petitioner's claim as to appellate counsel, but cannot treat it as a separate claim. Petitioner never raised the claim in his state proceedings, and thus it is unexhausted for purposes of habeas review.

evidence and the prosecutor's violation of CPL § 450.10 mandate [sic]." (Pet. at 4.)

A. <u>Applicable Legal Standard</u>

It is well-established that a criminal defendant is entitled to the effective assistance of counsel at trial and on a direct appeal available as a matter of right. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 105 S. Ct. 830 (1985). To prevail on a claim of ineffective assistance of appellate counsel, a defendant must satisfy the two-pronged test of <u>Strickland v. Washington</u>, 466 U.S. 688, 104 S. Ct. 2052 (1984). <u>See</u> <u>Smith v. Murrray</u>, 477 U.S. 527, 533-36, 106 S. Ct. 2661 (1986); <u>McKee v. United States</u>, 167 F.3d 103, 106 (2d Cir. 1999); <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994). In <u>Strickland</u>, the Supreme Court held that to prevail on a claim of ineffective assistance of counsel, the defendant must first show "that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S. Ct. at 2064. The standard applicable to attorney performance is "simply reasonableness under prevailing professional norms." <u>Id.</u> The Court must determine whether, in light of all the circumstances, counsel's acts or omissions were "outside the wide range of professionally competent assistance." <u>Id.</u>, 466 U.S. at 690, 104 S. Ct. at 2066. In evaluating the reasonableness requirement, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that

is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial [or appellate] strategy." Id., 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks omitted).  The Second Circuit has defined a "strategic decision" as a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004) (quoting Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001)).

      To satisfy the second prong of Strickland, the defendant must show that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. 2052.  A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. See id., 466 U.S. at 668, 104 S. Ct. at 2068.

      In a habeas proceeding, a petitioner "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because, under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."  Rather, he must "show that the [the state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99, 122 S. Ct. 1843, 1852 (2002) (citations omitted). Petitioner has failed to

do so.

      Petitioner's primary claim is that appellate counsel omitted a claim of ineffective assistance of trial counsel, and instead advanced "weaker" claims. However, in challenging the reasonableness of counsel's performance, it does not suffice "for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument." Mayo, 13 F.3d at 533. The Supreme Court has recognized that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-752, 103 S. Ct. 3308, 3313 (1983). Thus, the Supreme Court has held that nothing in the Constitution requires judges to second-guess reasonable professional judgments, or imposes on appointed counsel a duty to raise every "colorable" claim suggested by a client, for such a duty would "disserve the very goal of vigorous and effective advocacy." Id., 463 U.S. at 754, 103 S. Ct. at 3314.

    A petitioner may rebut the presumption that the challenged conduct reflected merely a strategic choice, by showing that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533. Petitioner has failed to do so, and he certainly has not established that the outcome of his appeal would likely have been different had counsel advanced the arguments he now propounds.

The arguments appellate counsel advanced on Petitioner's behalf were strategically sound. Petitioner's claim that he was denied the right to testify before the grand jury had a factual underpinning, and the right to testify before the grand jury is clearly established under New York law. <u>See</u> N.Y. Crim. Proc. Law § 190.50. Likewise, Petitioner was removed from the courtroom for the duration of his entire trial, which is a serious matter that courts will generally review carefully. Thus, it was a wise strategic choice for counsel to include that argument on appeal. Finally, counsel supported her contention that Petitioner's sentence was an abuse of discretion with numerous references to New York law, and it was not unreasonable for her to select such an argument out of the many that she could have advanced on Petitioner's behalf.

In contrast, an evaluation of the claims that Petitioner contends rendered his trial counsel constitutionally ineffective reveals that appellate counsel's decision to omit the claims was reasonable, and no prejudice to Petitioner could have resulted from their omission.

B. <u>Motion to Dismiss</u>

Petitioner claims his trial counsel was ineffective for failing to move for a dismissal based on insufficient evidence. However, the court deemed Petitioner's counsel to have made such a motion at the completion of the state's case. (<u>See</u> Tr. at 232.)

33

Additionally, prior to sentencing, Petitioner's trial counsel moved to set aside the verdict on the ground that it was against the credible weight of the evidence. (<u>See</u> Sent. Tr. at 2.)  The trial court denied both motions.  Therefore, there is no merit to Petitioner's claim that his attorney's alleged failure to make a motion challenging the sufficiency of the evidence rendered his attorney's performance, and by extension, his appellate counsel's performance, constitutionally deficient.

C. <u>Right to Confrontation and Cross-Examination</u>

Petitioner also faults trial counsel for failing to safeguard his right to confront the complaining witness, Adva Prager. However, Prager did not appear as a witness at trial, and therefore Petitioner had no right to cross-examine her.  Moreover, no out-of-court statements made by Prager were used in court as evidence, and therefore Petitioner's right to confrontation was not violated. Finally, Prager was not subject to the court's subpoena power, since she returned to Israel.  Therefore, defense counsel could not have called her as a witness. Because this claim has no merit, appellate counsel was not ineffective for failing to raise it.

D. <u>Missing Witness Charge</u>

Petitioner also faults trial counsel for failing to move for a "missing witness charge" with respect to Prager.  Such a charge derives from the rule that in criminal cases, "if a party has it peculiarly within his power to produce witnesses whose testimony

would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Graves v United States, 150 U.S. 118, 121, 14 S. Ct. 40, 41 (1893). Petitioner contends, without any factual support, that had Prager testified, she "would have stated nothing had been stolen from her," that she "in fact did not own either a knapsack or a fanny pouch," and that "any credit card she might have owned could not conceivably be in either." (Pet'r Mem. at 7, 13.)

It is clear that counsel's failure to move for a missing witness charge with respect to Prager would not have been fruitful, for the court considered sua sponte whether such a charge would be appropriate, and decided it would not be. (See Tr. at 279.) The court decided not to issue the charge because Prager was in Israel and not within the state's control. See id.; see also People v. Ortega, 166 A.D.2d 728, 561 N.Y.S.2d 298 (2d Dep't 1990) (holding New York courts will not provide the jury with a missing witness charge where the missing witness returns to her native country, for in such cases, she is "unavailable" to the extent she could not be compelled by the People to testify at trial). Accordingly, trial counsel's failure to move for the charge cannot be said to have prejudiced Petitioner, as the Court considered the issue on its own initiative and rejected it.

E. Failure to Object to or Examine People's Evidence

Finally, Petitioner faults his trial attorney for failing to

"take exception to the prosecution's mischaracterization and use of knowingly false evidence and the prosecution's violation of New York Penal Law § 450.10." (Pet'r Mem. at 9). Petitioner contends that trial counsel should have objected during the prosecutor's summation, during which Petitioner alleges the prosecutor "misled" the jury into believing that photographs introduced in evidence displayed the knapsack Petitioner was alleged to have stolen. However, there was no legal basis for such an objection. Officer Belcher testified at trial that he had photographed the knapsack, recovered from Petitioner and belonging to Prager, prior to returning it to her, and the photograph was introduced as People's Exhibit 7. (See Tr. at 197-98.)  In his summation, the prosecutor referred to that photograph in order to argue his theory of the case.  Petitioner offers no basis to conclude that the prosecutor mischaracterized Officer Belcher's testimony or People's Exhibit 7.

Petitioner also faults his trial counsel for failing to serve notice on the prosecution in order to "examine, photograph, or photocopy" the state's evidence, namely, the credit card Petitioner allegedly stole. (Pet'r Mem. at 9.) Petitioner contends that the "allegedly stolen credit card "[did] not exist," and that the handwritten voucher document completed at the time of his arrest identified a VISA card with only eleven digits, while a valid card contains sixteen digits. (Pet'r Mem. at 10.)  However, defense counsel could not have examined the evidence, because at

36

Petitioner's arraignment on September 7, 1999, and again on September 13, 1999, the prosecutor served notice on Petitioner that "Pursuant to Penal Law Section 450.10 ... the property has been photographed and returned to the owner." (See Rep't Mem. at 51). Nevertheless, two photocopies of the stolen credit card were retained by the state and introduced at trial as People's Exhibits 9A and 9B. (See Tr. at 199-200.) Returning a stolen item to the victim of a theft prior to trial, but retaining a photocopy for evidentiary purposes, is proper under New York law. See N.Y. Penal Law § 450.10. Moreover, Officer Belcher testified that he recovered the card from the knapsack Petitioner took from Prager. The card bore Prager's name and had sixteen digits, as was evident from the photocopy. (See Tr. at 188, 195-200, 214, 216.) There is no competent evidence whatsoever that raises doubt as to the existence or validity of the credit card. Therefore, counsel's failure to examine the physical credit card did not prejudice Petitioner in any way.

* * *

Because none of Petitioner's ineffective assistance claims has any merit, it was reasonable for appellate counsel not to raise any of them on appeal. Moreover, had they been raised, it is equally clear that the outcome of the appeal would not have changed. Accordingly, Petitioner has not demonstrated ineffective assistance of appellate counsel, and this claim should be dismissed.

**CONCLUSION**

For the reasons set forth above, this Court respectfully recommends that this action be dismissed with prejudice. Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court recommends that no certificate of appealability be issued. <u>See</u> 28 U.S.C. 2253(c)(2); <u>Lucidore v. N.Y. State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir.), <u>cert. denied</u>, 531 U.S. 873, 121 S. Ct. 175 (2000). The Court further recommends that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith. <u>See Coppedge v. United States</u>, 369 U.S. 438, 82 S. Ct. 917 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Stein. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 145, 106 S. Ct. 466, 470 (1985); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Small v. Sec'y of Health & Human</u>

Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:   August 8, 2005
         New York, New York

Copies sent to:

Charlie Jones
#00A5757
Eastern N.Y. Corr. Facility
P.O. Box 338
Napanoch, New York 12458-0338

Robert M. Morgenthau
District Attorney
New York County
One Hogan Place
New York, New York 10013